NOT DESIGNATED FOR PUBLICATION

No. 127,283

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ARRIN FARRAR, et al.,
*Appellants*,

v.

TEXTRON AVIATION, INC., et al.,
*Appellees*.


MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Oral argument held November 12, 2024. Opinion filed December 20, 2024. Affirmed.

*Joseph A. Kronawitter* and *Taylor P. Foye*, of Horn Aylward & Bandy, LLC, of Kansas City, Missouri, and *Arthur Alan Wolk*, pro hac vice, of The Wolk Law Firm, of Philadelphia, Pennsylvania, for appellants.

*Lynn D. Preheim* and *Nanette Turner Kalcik*, of Stinson LLP, of Wichita, for appellees.


Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

MALONE, J.: After Arrin Farrar suffered serious injuries in a plane crash during a training flight, he and his wife sued Textron Aviation, Inc., and the Cessna Aircraft Company (collectively Textron), alleging the accident was caused by a failure in the pilot's seat that caused it to uncontrollably shift backward during takeoff. Textron timely moved for summary judgment, arguing the Farrars' claims were precluded under the 18-year statute of repose found in the General Aviation Revitalization Act of 1994 (GARA), Pub. L. No. 103-298, 108 Stat. 1552, codified in the notes to 49 U.S.C. § 40101. To try to

1

avoid the statute of repose, the Farrars relied on GARA's misrepresentation exception, 49 U.S.C. § 40101 note, § 2(b)(1), which provides that when a manufacturer knowingly misrepresents, conceals, or withholds required information—i.e., information the manufacturer has an affirmative duty to report to the Federal Aviation Administration (FAA) that is causally related to the accident—the statute of repose does not apply.

The district court at first denied Textron's motion, finding there were genuine disputes of material fact about whether Textron had failed to notify the FAA about an allegedly defective seat locking mechanism as required under 14 C.F.R. § 183.63 (2016). Textron then filed what it called a renewed motion for summary judgment asking the district court to review its decision to correct an error of law; specifically, Textron pointed out that 14 C.F.R. § 183.63 was not enacted until 2005, almost a decade after the Farrars' cause of action had been extinguished under GARA's statute of repose. The district court agreed and entered summary judgment for Textron.

On appeal, the Farrars claim: (1) The district court erred in granting summary judgment for Textron on the ground that 14 C.F.R. § 183.63 did not take effect until 2005 and also because this regulation was not the only source of Textron's reporting requirement, and (2) the district court erred in considering Textron's untimely renewed motion for summary judgment and in treating it as a motion to reconsider. After thoroughly reviewing the record and the parties' arguments in their briefs, we find no error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 26, 2016, Farrar, a student pilot, was seriously injured in a plane crash near Charleston, West Virginia during a training flight. His instructor, Brenda Jackson, who was operating the plane at the time of the crash, died in the accident. During takeoff, the plane lifted off about 1,000 feet down the runway, but a "seat slip" caused the pilot's

seat to shift backward causing Jackson to lose control of the aircraft. The aircraft pitched nose up, rolled left and inverted, and crashed nose-first next to the runway. It is undisputed that the accident was caused by the seat slip during takeoff, but the cause of the seat slip is in dispute.

The plane was a 1979 Cessna 172N single-engine airplane, serial number 17272656 and FAA registration number N6238D. It was produced by Cessna under the FAA Type Certificate Data Sheet 3A12, and the particular model Cessna 172N was approved by the FAA on May 17, 1976. The plane initially had been sold to a company in Ohio in July 1979. Cessna was the type certificate holder from the time of the 172N's manufacture until 2015, when it was transferred to Textron as part of Cessna's merger with Textron. It had a maximum seating capacity of four passengers.

The plane that crashed with Farrar had not been maintained, operated, modified, repaired, or in Textron's possession since its initial delivery to its first purchaser in 1979. Textron never worked on the seat mechanism the Farrars claim caused the accident. The seat rails that were installed in the plane had been replaced in 2015 with parts manufactured by McFarlane Aviation, Inc. (McFarlane), with a principal place of business in Douglas County, Kansas.

On May 8, 2019, Farrar and his wife sued Textron and McFarlane under several theories, including strict liability, negligence, breach of warranties, fraud, and reckless, outrageous, willful and wanton conduct. They alleged that the accident occurred when seat pins holding the pilot's seat malfunctioned, causing the seat to suddenly and uncontrollably shift toward the back of the plane. When the pilot's seat slid back, Jackson involuntarily pulled back on the control yoke and was unable to reach the rudder pedals, causing the plane to crash. The petition included a list of other accidents that had allegedly been caused by similar seat-slip problems. Textron's answer raised several defenses including that the Farrars' claims were barred under GARA's statute of repose.

3

After completion of discovery, Textron timely moved for summary judgment against the Farrars, arguing their suit was barred under GARA's statute of repose because the accident occurred more than 18 years after the plane was sold, and no exceptions to the bar applied. The Farrars responded that Textron had misrepresented, concealed, and withheld the truth about the seat defect and thus was not entitled to the protection of GARA. They also argued that Textron was not entitled to summary judgment under GARA's rolling provision at 49 U.S.C. § 40101 note, § 2(a)(2), which allows a plaintiff to avoid the statute of repose if they can identify a new part added to the airplane within 18 years of the accident which was defective and caused the accident. Textron replied that GARA's rolling provision did not apply to Textron because the replacement part that caused the accident was manufactured by McFarlane. It also argued that GARA's misrepresentation exception was inapplicable because the Farrars could not point to any misrepresentation made to the FAA, or that any required information was concealed.

On August 17, 2023, the district court issued its memorandum decision on Textron's GARA-based summary judgment motion. The district court began by noting that because the plane was first purchased in 1979, the limitation period expired in 1997 unless GARA's rolling provision or misrepresentation exception applied. As for the rolling provision, the district court ruled that the seat mechanism was original, except for the seat rails which were installed in 2015, but those seat rails were manufactured by McFarlane, not Textron. Thus, because Textron did not produce, assemble, or sell the seat rails, the district court found that GARA's rolling provision was inapplicable.

Turning to the misrepresentation exception, the district court found that there was no factual dispute about whether Textron had complied with 14 C.F.R. § 21.99 (2016), 14 C.F.R. § 21.50(b) (2016), and 14 C.F.R. § 21.3 (2016). But the district court found that 14 C.F.R. § 183.63, which required Textron to notify the FAA of a condition that *could* result in a finding of unsafe condition, supported application of GARA's misrepresentation exception. The district court found that, when viewing the evidence in

4

a light most favorable to the Farrars, a jury could infer that Textron was aware that the seat locking mechanism was unsafe and failed to report it to the FAA. Thus, the district court denied Textron's GARA-based summary judgment motion. Notably, the district court found that 14 C.F.R. § 183.63 was the sole reporting regulation precluding summary judgment for Textron.

On August 31, 2023, Textron filed another motion, titled "Textron Aviation Inc.'s Renewed GARA Motion for Summary Judgment, or in the Alternative, Motion to Include Additional Findings and Permit an Immediate Appeal, and Request for Immediate Hearing." At the outset, Textron noted "this is an unusual motion, but it is necessitated by Plaintiffs' failure to raise 14 C.F.R[.] § 183.63 in any fashion until their response to the Textron Aviation's GARA summary judgment motion." Textron explained that 14 C.F.R. § 183.63, which formed the basis for the district court's denial of summary judgment, did not go into effect until November 2005—after the Farrars' cause of action was extinguished under GARA in 1997. In short, Textron argued that based on the enactment date, 14 C.F.R. § 183.63 did not impose reporting requirements that supported the application of GARA's misrepresentation exception and asked the district court to enter summary judgment in its favor or, in the alternative, to amend its decision and journal entry to allow for an immediate interlocutory appeal on the matter.

In response, the Farrars filed a "Motion to Strike Untimely Renewed Motion for Summary Judgment." They argued that Textron's motion was a dispositive and untimely attempt by Textron to have a "second bite at the apple" and alleged there were no "new developments in law or in fact that justify [Textron's] rehashed motion, and certainly nothing new to warrant this Court's reconsideration of its order denying [Textron's] original GARA motion." At a hearing on September 6, 2023, the district court agreed that "as far as the timelines go if you view this as a new motion for summary judgment, [the motion was] clearly well past deadline." The district court took the motion to strike under advisement and allowed the Farrars time to respond to Textron's renewed motion.

5

On September 25, 2023, the district court heard argument from the parties on Textron's renewed motion. Textron contended that it was simply asking the district court to consider another point of law related to its previously ruled on motion for summary judgment—specifically, the enactment date of 14 C.F.R. § 183.63. The Farrars argued that Textron's motion was untimely because it was a new motion adding arguments that should have been included in the original summary judgment motion.

The next day, the district court issued a memorandum decision granting Textron's renewed motion. The district court stated it was treating Textron's motion as a motion to reconsider: "[T]he substance of the Renewed Motion shows that it is not a new motion for summary judgment [and did] not contain a shift in theory. . . . [It] merely adds the additional information that 14 C.F.R. § 183.63 did not go into effect until 2005." As for the motion's substance, based on the regulation's enactment date, the district court found:

> "[The enactment date] is significant because GARA's statute of repose extinguishes any claims against the manufacturer of the Subject Aircraft after 1997 unless the misrepresentation exception applies. The misrepresentation exception prevents extinguishment of a claim if it is proven that Textron knowingly misrepresented, concealed, or withheld information from the Federal Aviation Administration ("FAA") that Textron was required to report to the FAA. 14 C.F.R. § 183.63 did not take effect until 2005, which is after the cause of action was extinguished by GARA's statute of repose in 1997. 14 C.F.R. § 183.63 cannot be the basis for a reporting requirement related to the GARA misrepresentation exception in this case because the 18-year statute of repose abolished the claim against the manufacturer of the Subject Aircraft in 1997."

The district court also included an enumerated list of findings of fact not included in its previous ruling denying summary judgment. The Farrars filed a motion to reconsider which the district court denied. This appeal follows.

6

On appeal, the Farrars first claim the district court erred in granting summary judgment for Textron on the ground that 14 C.F.R. § 183.63 did not take effect until 2005 and also because this regulation was not the only source of Textron's reporting requirement. Second, the Farrars claim the district court erred in considering Textron's untimely renewed motion for summary judgment and in treating it as a motion to reconsider. We will address these issues in reverse order.

## DID THE DISTRICT COURT ERR IN TREATING TEXTRON'S RENEWED MOTION FOR SUMMARY JUDGMENT AS A MOTION TO RECONSIDER?

The Farrars argue that the district court erred in treating Textron's renewed motion for summary judgment as a motion to reconsider. They contend that the substance of Textron's renewed motion did not seek reconsideration of the district court's previous ruling but presented new grounds for summary judgment and was thus untimely. Textron asserts that its renewed motion was timely and appropriately considered as a motion to reconsider or a motion to alter or amend the judgment under K.S.A. 60-259(f). It argues that the district court retained the inherent power to review its own proceedings and correct errors. It also argues that the district court properly exercised its discretion in granting summary judgment based on a question of law on admitted facts, which served the ends of justice and promoted judicial economy. In a reply brief, the Farrars assert that Textron should be estopped from arguing its renewed motion for summary judgment was a motion to reconsider because Textron did not make this argument in district court.

Both parties agree we should review the district court's decision for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing it. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

7

This court has long held that "courts should treat petitions, motions, or other papers for what they are *based on their substance rather than on how they are captioned or titled*." (Emphasis added.) *In re Estate of Heiman*, 44 Kan. App. 2d 764, 769, 241 P.3d 161 (2010); see also *Smith v. State*, 22 Kan. App. 2d 922, 925, 924 P.2d 662 (1996) ("We can think of no good reason for concluding that the caption of a pleading should control over its content."). The *Heiman* court noted that "the Kansas Code of Civil Procedure contemplates that filings should be construed to effect their purpose, not in technical ways that thwart an airing of the parties' underlying legal dispute." 44 Kan. App. 2d at 769. As Textron notes, the Kansas Supreme Court has looked to the substance and timing of a motion in determining whether it could properly be treated as a motion to reconsider. See *In re Estate of Lentz*, 312 Kan. 490, 497-98, 476 P.3d 1151 (2020).

The purpose of a motion to alter or amend judgment—and, likewise, a motion to reconsider—is to allow the district court to correct previous errors by reconsidering evidence that was presented before the court's entry of judgment. Thus, the district court was limited to considering matters and evidence that were before the court when it ruled on Textron's summary judgment motion. See *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 939-40, 159 P.3d 215 (2007) ("[W]here a summary judgment is rendered and where a party moves to alter or to amend the judgment, a trial court in determining the validity of the summary judgment should limit its consideration to the matters which were before the court when it entered the judgment in the first instance.").

Textron's motion was confusingly titled "Textron Aviation Inc.'s Renewed GARA Motion for Summary Judgment, or in the Alternative, Motion to Include Additional Findings and Permit an Immediate Appeal, and Request for Immediate Hearing" and it lacked any reference to K.S.A. 60-259(f). That said, the motion was timely under K.S.A. 2023 Supp. 60-259(f) and noted its purpose was to alert the court "that 14 C.F.R.

§ 183.63 was not enacted *until October 13, 2005*. Because 14 C.F.R. § 183.63 did not become effective until 2005, it did not create a duty that would prevent the limitation period for claims regarding the Subject Aircraft from expiring in 1997."

Textron's motion included no new evidence or substantive argument beyond the legal point that the regulation that was the sole ground for the district court's prior ruling was not in effect when the statute of repose expired. The district court determined that the substance of Textron's motion showed that it was not a new motion for summary judgment and contained no shift in theory. The district court reasoned:

> "[T]he Renewed Motion reasserts that 14 C.F.R. § 183.63 does not create a reporting obligation that Cessna violated and merely adds the additional information that 14 C.F.R. § 183.63 did not go into effect until 2005. The additional information about 14 C.F.R. § 183.63 in the Renewed Motion is a correct statement of the law, it is significant for the issue before the court, and neither party included it in the Motion for Summary Judgement [*sic*], Response, or Reply.
>
> "The Renewed Motion is essentially a motion to reconsider the court's order denying summary judgment. . . . When the Renewed Motion for Summary Judgment is treated as a motion to reconsider, which is treated as a motion to alter or amend pursuant to K.S.A. 60-259(f), the Motion was timely filed because it was filed less than 28 days after the order denying summary judgment.
>
> "The court has the innate authority to correct an error of law, such as the one in the Memorandum Decision Denying Summary Judgment and the Renewed Motion is substantively a timely-filed motion to reconsider. The Renewed Motion for Summary Judgment is properly before the court."

The Farrars argue that the district court erred in construing Textron's motion as a motion to reconsider under K.S.A. 60-259(f) because it added an argument that was never raised in the original summary judgment briefing. This is an overstatement. The only additional argument included in the renewed motion was the aforementioned error of law—that 14 C.F.R. § 183.63 was not enacted when the Farrars' claim expired under

9

GARA's statute of repose. Textron's argument in the renewed motion was the same as its argument in the original summary judgment motion: The GARA misrepresentation exception did not apply because Textron was not required to report any issues with the seat mechanism under 14 C.F.R. § 183.63. The substance of Textron's motion shows that the district court properly treated it as a motion to reconsider the prior ruling.

The Farrars assert that Textron should be estopped from arguing its renewed motion for summary judgment was a motion to reconsider because Textron did not make this argument in district court. We disagree. Although Textron did not cite K.S.A. 60-259(f) in district court, the thrust of its argument was that 14 C.F.R. § 183.63's enactment date should affect the district court's legal conclusion that this regulation alone precluded summary judgment for Textron based on GARA's statute of repose. In other words, Textron argued that the district court should reverse its prior ruling because of an error of law, which is a proper ground to alter or amend a judgment under K.S.A. 60-259(f).

We also agree with Textron's claim that the district court retained the inherent power to review its own proceedings and correct errors. See *McTaggart v. Liberty Mut. Ins.*, 267 Kan. 641, 645, 983 P.2d 853 (1999) ("There is no question that a trial court retains control over its proceedings and has the power to correct errors or injustice until a final judgment is entered."). The district court's decision to consider the renewed motion for summary judgment ensured that all relevant information was considered by the court, served the ends of justice, and may have avoided an unnecessary trial.

We conclude the district court did not err in treating Textron's renewed motion for summary judgment as a motion to reconsider. The district court's ruling was based on a purely legal issue, the effective date of 14 C.F.R. § 183.63, and was supported by undisputed facts. Whether the district court correctly ruled that 14 C.F.R. § 183.63 was not the basis here for a reporting requirement under GARA's misrepresentation exception because it was enacted in 2005 will be addressed in the next section of this opinion.

The Farrars argue that the district court erred in granting summary judgment for Textron on the ground that 14 C.F.R. § 183.63 did not take effect until 2005 and also because this regulation was not the only source of Textron's reporting requirement. They assert that Textron also needed to report the seat-slip issue under 14 C.F.R. § 21.3(a), (b), and (f). Textron responds that the district court properly considered, and rejected, all the Farrars' arguments about the application of GARA's misrepresentation exception and that summary judgment was properly granted in its favor.

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]""" *Fairfax Portfolio v. Carojoto*, 312 Kan. 92, 94-95, 472 P.3d 53 (2020).

*GARA's statute of repose*

In 1994, the United States Congress enacted GARA in an effort to revitalize the general aviation industry following a serious decline in the manufacture and sale of general aviation aircraft by United States-based companies. See *Burton v. Twin Commander Aircraft LLC*, 171 Wash. 2d 204, 216, 254 P.3d 778 (2011). "An important

11

cause of the decline was attributed to the industry's increasing product-liability costs." *Hetzer-Young v. Precision Airmotive Corp.*, 184 Ohio App. 3d 516, 524, 921 N.E.2d 683 (2009). At its core, GARA "'attempts to strike a fair balance by providing some certainty to manufacturers, which will spur the development of new jobs, while preserving victims' rights to bring suit for compensation in certain particularly compelling circumstances.'" *Burroughs v. Precision Airmotive Corp.*, 78 Cal. App. 4th 681, 691, 93 Cal. Rptr. 2d 124 (2000).

To accomplish this goal, GARA provides a statute of repose that acts to protect manufacturers from long-term liability in lawsuits arising from accidents involving aircraft or component parts that are more than 18 years old. *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001); *Alter v. Bell Helicopter Textron, Inc.*, 944 F. Supp. 531, 542 (S.D. Tex. 1996). "The statute acts not just as an affirmative defense, but instead 'creates an explicit statutory right not to stand trial.'" *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 951 (9th Cir. 2008). GARA provides in part:

"SEC. 2. TIME LIMITATIONS ON CIVIL ACTIONS AGAINST AIRCRAFT MANUFACTURERS.
    "(a) IN GENERAL.—Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred—
    (1) after the applicable limitation period beginning on—
    (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
    (B) the date of first delivery of the aircraft to a person engaged in the business of selling or leasing such aircraft; or
    (2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or

12

damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.

"(b) EXCEPTIONS.—Subsection (a) does not apply—

(1) if the claimant pleads with specificity the facts necessary to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft *knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Aviation Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered*;

. . . .

"SEC. 3. OTHER DEFINITIONS

"For purposes of this Act—

(1) the term 'aircraft' has the meaning given such term in section 101(5) of the Federal Aviation Act of 1958 (49 U.S.C. 1301(5)) [see 49 U.S.C. 40102(a)(6)];

(2) the term 'airworthiness certificate' means an airworthiness certificate issued under section 603(c) of the Federal Aviation Act of 1958 (49 U.S.C. 1423(c)) [see 49 U.S.C. 44704(c)(1)] or under any predecessor Federal statute;

(3) *the term 'limitation period' means 18 years with respect to general aviation aircraft and the components, systems, subassemblies, and other parts of such aircraft; and*

(4) the term 'type certificate' means a type certificate issued under section 603(a) of the Federal Aviation Act of 1958 (49 U.S.C. 1423(a)) [see 49 U.S.C. 44704(a)] or under any predecessor Federal statute." (Emphases added.) 49 U.S.C. § 40101 note, §§ (2), (3).

As noted above, the applicable "limitation period" provided under GARA is 18 years. 49 U.S.C. § 40101 note, § 3(3). As the district court explained, based on this 18-year statute of repose and the fact that the airplane in question was built and delivered to its first purchaser in 1979, any claims the Farrars had against Textron based on the accident were extinguished in 1997, unless the rolling provision of section 2(a)(2) or the misrepresentation exception of section 2(b)(1) applied.

13

*The Farrars' claims under the misrepresentation exception*

The Farrars do not challenge the district court's conclusion that the rolling provision in section 2(a)(2) of GARA did not apply because McFarlane, not Textron, was the manufacturer of the replacement seat rails, which were installed in the plane in 2015. Instead, they argue that the district court erred in finding they could not bring their claims under section 2(b)(1), GARA's misrepresentation exception. The misrepresentation exception applies when a manufacturer (1) knowingly misrepresents, conceals, or withholds, (2) required information from the FAA, that is (3) causally related to the accident. *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 646-47 (E.D. Pa. 2004) (citing *Rickert v. Mitsubishi Heavy Industries, Ltd.*, 923 F. Supp. 1453, 1456 [D. Wyo. 1996]).

Under this exception, "required information" means that the manufacturer has an affirmative duty to report the information under a statute, regulation, or caselaw, in response to a direct inquiry from the FAA, or to correct information previously supplied by the manufacturer to the FAA. See *Cartman v. Textron Lycoming Reciprocating Engine Division*, No. 94-CV-72582-DT, 1996 WL 316575, at *3 (E.D. Mich. 1996); *Butler v. Bell Helicopter Textron, Inc.*, 109 Cal. App. 4th 1073, 1084, 135 Cal. Rptr. 2d 762 (2003). In district court, the Farrars pointed to several regulations they alleged required Textron to report information about the seat-slip issue here, including:  14 C.F.R. § 183.63, 14 C.F.R. § 21.99, 14 C.F.R. § 21.50(b), and 14 C.F.R. § 21.3(a), (b), and (f).

"It is not sufficient for a plaintiff to allege that the aircraft was negligently designed. The plaintiff must offer evidence that the defendant knowingly misrepresented or concealed or withheld this design defect in communications with the FAA." *Robinson*, 326 F. Supp. 2d at 647. Moreover, a plaintiff must plead and prove *with specificity* facts

14

establishing that the manufacturer knowingly misrepresented, concealed, or withheld "*information that must be reported* that is 'material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the [claimant's alleged] harm.'" (Emphasis added.) *Burton*, 171 Wash. 2d at 208; see also *McAuliffe v. Robinson Helicopter Co., Inc.*, CIV No. 21-00193 HG-WRP, 2024 WL 1995294, at *7 (D. Haw. 2024) ("The pleading requirement in Section 2[b][1] of GARA mirrors Federal Rule of Civil Procedure 9[b] which requires that parties plead claims sounding in fraud with particularity under a heightened pleading standard."). In other words, GARA places the burden on a plaintiff to establish that the misrepresentation exception applies. *Burton*, 171 Wash. 2d at 223.

As explained above, the district court initially denied Textron's motion for summary judgment, finding there was a factual dispute about whether Textron knowingly misrepresented, withheld, or concealed information from the FAA under 14 C.F.R. § 183.63 but rejecting the Farrars' claim that any other regulations applied. But, after considering Textron's renewed motion, the district court found there were no disputed issues of material fact about whether Textron failed to notify the FAA of a potentially defective seat locking mechanism under 14 C.F.R. § 183.63 because the regulation was not enacted until after the Farrars' cause of action was barred under the statute of repose.

On appeal, the Farrars contend that "[t]he District Court's order granting summary judgment under GARA in favor of Textron because of the enactment of 14 C.F.R. § 183.63 was erroneous *because Plaintiffs' claims did not hinge solely on 14 C.F.R. § 183.63's reporting requirements*." (Emphasis added.) The Farrars' main focus is the district court's analysis of 14 C.F.R. § 21.3(a), (b), and (f). The district court also addressed, and rejected, the application of 14 C.F.R. § 21.99 and 14 C.F.R. § 21.50 as bases for a reporting requirement, but the Farrars have not addressed these regulations on appeal. An issue that is not briefed is deemed waived or abandoned. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 803, 466 P.3d 1207 (2020).

15

*Reporting requirements under 14 C.F.R. § 21.3(a), (b), and (f)*

The Farrars first point to 14 C.F.R. § 21.3(a), which mandates that "[t]he holder of a type certificate . . . must report any failure, malfunction, or defect in any product or article manufactured by it that it determines has resulted in any of the occurrences listed in paragraph (c) of this section" which include "[a]ny structural or flight control system malfunction, defect, or failure which causes an interference with normal control of the aircraft for which derogates the flying qualities." See 14 C.F.R. § 21.3(c)(11). They argue the district court incorrectly found that under 14 C.F.R. § 21.3(a) Textron was not obligated to report any failures, malfunctions, or defects with the seat mechanism that had already been reported to the FAA or the National Transportation Safety Board (NTSB).

The district court found that the reporting requirements of 14 C.F.R. § 21.3(a) did not apply to the seat-slip issues because paragraph (d)(1) specifically excludes from its reporting requirements "[f]ailures, malfunctions, or defects that . . . [w]ere reported to the FAA by another person under this chapter or; . . . [w]ere reported under the accident reporting provisions of 49 CFR part 830 of the regulations of the National Transportation Safety Board." The district court explained:

> "All seat slip accidents and incidents referenced by Plaintiffs are the subjects of Service Difficulty Reports ('SDRs') to the FAA or crash investigations by the National Transportation Safety Board ('NTSB'). The record contains no assertion or factual support that the court can discern to establish that Textron knew of any accidents or incidents related to seat slips that were not the subject of an NTSB investigation or a SDR through the FAA. Textron was not obligated by 14 C.F.R. § 21.3(a) to report failures, malfunctions, or defects that the FAA and the NTSB already knew about from SDRs or accident investigations. Plaintiff failed to properly establish any facts that place in question whether Textron withheld, concealed, or misrepresented information to the FAA

16

that was separate and distinct from accidents or incidents the FAA or the NTSB already knew about."

While the Farrars cite several cases in which courts have relied on 14 C.F.R. § 21.3(a) in applying GARA's misrepresentation exception, none of these cases address the specific exception the district court relied on to rule out the application of the reporting requirement. In their reply brief, the Farrars argue that because "14 C.F.R. § 21.3 sets for an *independent reporting requirement* it does not matter whether some other entity made a report to the FAA or whether the FAA already knew of an incident[,]" but they do not provide any authority to support this proposition. Significantly, the Farrars do not even address the district court's construction of paragraph (d)(1)'s plain language. Moreover, the Farrars do not point to any evidence in the record to raise a dispute about whether any accidents occurred and were not reported to the FAA or NTSB. Because no evidence supports that Textron knew of accidents related to seat slips that were not otherwise reported to the FAA or NTSB and the Farrars provide no authority to demonstrate that the district court erred in relying on paragraph (d)(1), we conclude the district court did not err in analyzing the application of 14 C.F.R. § 21.3(a).

Turning to 14 C.F.R. § 21.3(b), this provision mandates that "[t]he holder of a type certificate . . . must report any defects in any product or article manufactured by it that has left its quality system and that it determines could result in any of the occurrences listed in paragraph (c) of this section." The district court first observed that the reporting requirement exceptions in 14 C.F.R. § 21.3(d) apply only to paragraph (a), not to paragraph (b). The district court then explained that 14 C.F.R. § 21.3(b) only requires manufacturers to report to the FAA when a product is dangerous because it is not in conformity with the *type certificate*—that is, the approved design—not simply because of general concerns about airworthiness. The district court reached this construction by looking to the nature of the "quality system" referenced in 14 C.F.R. § 21.3(b):

17

"The reporting requirement in (b) is directed at quality control systems that must ensure any manufactured product or article conforms to the type certificate. Quality control systems are associated with production certificates: 'To obtain a production certificate, the manufacturer must prove to the FAA that it has established and can maintain a quality control system to assure that each aircraft (including parts purchased from suppliers) will meet the design provisions of the type certificate.' *U.S. ex rel. Smith v. Boeing Co.*, No. CIV.A. 05-1073-MLB, 2014 WL 5025782, at *3 (D. Kan. Oct. 8, 2014), aff'd sub nom. *United States v. The Boeing Co.*, 825 F.3d 1138 (10th Cir. 2016). The purpose of a quality control system is to ensure fidelity to the type certificate. 'Each applicant for or holder of a production certificate must establish and describe in writing a quality system that ensures that each product and article conforms to its approved design and is in a condition for safe operation.' 14 C.F.R. § 21.137. The quality system must include 'Procedures for identifying, analyzing, and initiating appropriate corrective action for products or articles that have been released from the quality system and that do not conform to the applicable design data or quality system requirements.' 14 C.F.R. § 21.137(n).

"14 C.F.R. § 21.3(b) requires a type certificate holder to report to the FAA when a product or article has been produced that is not in conformity with the type certificate and is therefore dangerous. It does not require reporting of general concerns about airworthiness or design defects. Plaintiffs argue that the seat locking mechanism is defectively designed, not that it was unsafe because it deviated from the type certificate. The design defects Plaintiffs allege are not reportable under 14 C.F.R. § 21.3(b). Plaintiffs present no evidence of products or articles that deviate from the type certificate and might be reportable under 14[] C.F.R. § 21.3(b)."

The only argument the Farrars make on appeal challenging the district court's rationale is the conclusory statement that 14 C.F.R. § 21.3(b) "is not limited to conformity to the type certificate, and does in fact require manufacturers to report defects that *could* result in a structural or flight control system malfunction." They provide no authority to support this assertion in their brief and provide no other explanation for why we should find the district court's interpretation of 14 C.F.R. § 21.3(b) to be incorrect. Due to their failure to support their argument with any pertinent authority or to show why

18

it is sound despite a lack of supporting authority, we treat the Farrars' argument about the application of 14 C.F.R. § 21.3(b) as waived or abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

As for 14 C.F.R. § 21.3(f), this provision states that "[i]f an accident investigation or service difficulty report shows that a product or article manufactured under this part is unsafe because of a manufacturing or design data defect, the holder of the production approval for that product or article must, *upon request by the FAA*, report" the results of its investigation and any action taken to correct the defect. (Emphasis added.) The district court found that this section was inapplicable because "[t]here is no evidence that an accident investigation or [service difficulty report] showed that a Textron product was unsafe due to [a] manufacturing or design defect and there is no evidence that the FAA ever made a request of Textron to investigate." While the Farrars argue that the district court erred in finding Textron did not have any reporting requirement under 14 C.F.R. § 21.3(f), they do not address the substance of the district court's ruling.

The Farrars argue that "documents which Textron claimed were destroyed or unavailable, confirm exactly what Plaintiffs argued below:  Textron had multiple fixes for this dangerous defect[], knew that accidents and incidents continued, analyzed various solutions . . . and did nothing to inform the FAA that such a fix was necessary." But this argument ignores the second threshold for the reporting requirement under 14 C.F.R. § 21.3(f)—a request from the FAA for a report. Even if we assume that an accident or service difficulty report ever showed the subject aircraft to be unsafe because of a manufacturing or design defect with the seat mechanism, a review of the record reveals no such request by the FAA for a report related to any investigation of this issue. Thus, we cannot say that the district court erred in its analysis of 14 C.F.R. § 21.3(f).

In sum, the Farrars failed to establish in district court that the reporting requirements under 14 C.F.R. § 21.3(a), (b), or (f) applied to Textron to trigger the

misrepresentation exception to GARA's statute of repose. On appeal, the Farrars have failed to show any error in the district court's analysis of this regulation.

*Reporting requirements under 14 C.F.R. § 183.63*

Finally, the Farrars contend the district court erred in finding that 14 C.F.R. § 183.63 could not support a reporting requirement because the 18-year statute of repose abolished their claim in 1997, 8 years before 14 C.F.R. § 183.63 was enacted. Textron does not concede that 14 C.F.R. § 183.63 supports a reporting requirement here, but even if it does, Textron argues the district court correctly found that the Farrars could not rely on this regulation because of its enactment date.

14 C.F.R. § 183.63 states:

"[A]n ODA [Organization Designation Authorization] Holder must:
"(a) Monitor reported service problems related to certificates or approvals it holds;
"(b) Notify the Administrator of:
(1) A condition in a product, part or appliance that could result in a finding of unsafe condition by the Administrator; or
(2) A product, part or appliance not meeting the applicable airworthiness requirements for which the ODA Holder has obtained or issued a certificate or approval.
"(c) Investigate any suspected unsafe condition or finding of noncompliance with the airworthiness requirements for any product, part or appliance, as required by the Administrator, and report to the Administrator the results of the investigation and any action taken or proposed.
"(d) Submit to the Administrator the information necessary to implement corrective action needed for safe operation of the product, part or appliance."

The thrust of the Farrars' initial brief is that 14 C.F.R. § 183.63 was not the only source of Textron's reporting requirement—Textron was also required to report the seat-

20

slip issue to the FAA under other regulations including 14 C.F.R. § 21.3(a), (b), and (f). But in their reply brief, they argue that "[t]he trial court's reasoning for granting summary judgment was its misguided belief . . . that [the Farrars'] cause of action was already extinguished by the time the regulation 14 C.F.R. § 183.63 was enacted in 2005." They assert that "[n]othing in GARA simply does away with a cause of action after 18 years."

To perceive the flaw in the Farrars' reasoning, we must focus on the nature of a statute of repose. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes a cause of action after the passage of time even though the cause of action may not have yet accrued. A statute of repose is a substantive bar to a cause of action, not a remedial or procedural bar like a statute of limitations. *Bonin v. Vannaman*, 261 Kan. 199, 205, 929 P.2d 754 (1996). The statute of repose abolished the Farrars' cause of action in 1997, even before it accrued, unless a reporting requirement to trigger the misrepresentation exception at 49 U.S.C. § 40101 note, § 2(b)(1) applied. If this is the case, a reporting requirement that did not exist until 2005 could not possibly resurrect the Farrars' cause of action that was extinguished by the statute of repose in 1997. The result is harsh, but the application of a statute of repose inherently leads to a harsh result for the party bringing the action.

To conclude, GARA places the burden on a plaintiff to establish that the misrepresentation exception applies. *Burton*, 171 Wash. 2d at 223. Under the exception, a plaintiff must show the manufacturer knowingly misrepresented, concealed, or withheld required information—that is, information it had an affirmative duty to report under a statute or regulation—from the FAA, that is causally related to the accident. The Farrars tied no false representation or omission made by Textron to any applicable regulations. Because the Farrars have not presented evidence creating a genuine issue of material fact about whether Textron knowingly withheld, misrepresented, or concealed information that it was required to provide, we conclude the district court did not err in granting summary judgment for Textron under GARA's statute of repose.

21

Affirmed.